UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN D. EDWARDS,

               Plaintiff,                      Case No. 2:19-cv-10047
                                                District Judge Paul D. Borman

v.                                          Magistrate Judge Anthony P. Patti

ANDREW MEISNER, *et al.*,

               Defendants.

_____/

## REPORT AND RECOMMENDATION TO DENY WITHOUT PREJUDICE SEVERAL MOTIONS TO DISMISS (ECF Nos. 28, 29 & 30), GRANT HABITAT FOR HUMANITY'S MOTION TO DISMISS (ECF No. 37), and STAY THIS MATTER PENDING THE MICHIGAN SUPREME COURT'S DECISION IN *RAFAELI*

**I.**    **RECOMMENDATION:**  The Court should **DENY WITHOUT PREJUDICE** the Oakland County, City of Southfield, and Southfield Non-Profit Housing Corporation (SNPHC) / Southfield Neighborhood Revitalization Initiative (SNRI) Defendants' motions to dismiss (ECF Nos. 28, 39, 30), **GRANT** Habitat for Humanity's (HFH's) motion to dismiss (ECF No. 37), and **STAY** this proceeding pending the Michigan Supreme Court's decision in *Rafaeli, LLC v. Oakland Cty.*, No. 156849.

**II.**    **REPORT:**

    **A.**    **Background**

This lawsuit concerns the property commonly known as 25055 W. Ten

Mile Road, Southfield, MI 48033.  (ECF No. 24 ¶ 17.)  Plaintiff acquired ownership in this property on November 10, 2008.  (ECF No. 24 ¶ 19; ECF No. 24, PageID.559.)  Apparently, he made tax payments totaling $4,952.33 through February 2012, although it is not clear whether this brought his tax payments up to date.  (ECF No. 24 ¶ 19; ECF No. 24, PageID.561.)  Also, it appears that Plaintiff did not make property tax payments for the years 2012, 2013, 2014 or 2015, a 4-year period for which the obligations totaled $13,927.89.  (ECF No. 24 ¶¶ 18, 21; ECF No. 24, PageID.561.)

In February 3, 2016, as the result of a county tax sale, ownership in the property was transferred to the Oakland County Treasurer.  (ECF No. 24, PageID.559.)  (*See also* ECF Nos. 28-1, 29-2 [Case No. 2015-147555-CZ, Judgment of Foreclosure].)  Just a few weeks later, at a February 29, 2016 meeting, the City of Southfield Council authorized a joint venture between "the City of Southfield and the Southfield Non-Profit Housing Corporation [SNPHC], with the SNPHC providing the capital [to] finance the venture, allowing the City to acquire from the Oakland County Treasurer's office tax-foreclosed properties available in 2016 for the purpose of renovating and selling to owner occupants."  (ECF No. 24, PageID.566.)

Plaintiff claims that he, "on multiple occasions offered to repurchase his property for the delinquent taxes . . . to no avail."  (ECF No. 24 ¶ 5; *see also* ECF

No. 24 ¶¶ 24, 38.)  Nonetheless, on July 7, 2016, for the sum of $13,614.17, ownership in the property transferred from the Oakland County Treasurer to the City of Southfield.  (ECF No. 24 ¶¶ 4, 22; ECF No. 24, PageID.559; ECF No. 28-2.)

### B.    Plaintiff's Prior State Court Case

On July 15, 2016, Plaintiff filed a case in state court against the Oakland County Treasurer and the City of Southfield "requesting an order setting aside an order foreclosing on his property, invalidating the sale of the property, and granting plaintiff legal title to the property." *Edwards v. Oakland Cty. Treasurer*, No. 336682, 2018 WL 1831930, at *1 (Mich. Ct. App. Apr. 17, 2018).  *See* Case No. 2016-154022-CH (Oakland County).  Ultimately, on January 6, 2017, the court granted Defendants' motions for summary disposition.  (*See*, *e.g.*, ECF Nos. 28-3, 29-3.)  Five days thereafter, on January 11, 2017, ownership in the property transferred from the City of Southfield to "Southfield Neighborhood Revitalizat[,]" presumably the Southfield Neighborhood Revitalization Initiative (SNRI).  (ECF No. 24 ¶¶ 5, 23; ECF No. 24, PageID.559, ECF No. 30-5.)

On April 17, 2018, the Michigan Court of Appeals affirmed the trial court, while noting that "Plaintiff's remaining arguments concerning superintending control, MCL 211.78q(5), and 42 U.S.[C. §] 1983 were not brought before the trial court and are therefore not preserved for appellate review." *Edwards v. Oakland*

3

*Cty. Treasurer*, No. 336682, 2018 WL 1831930, at *7 (Mich. Ct. App. Apr. 17, 2018), *appeal denied*, 503 Mich. 875, 917 N.W.2d 652 (2018)).  On October 2, 2018, the Michigan Supreme Court denied Plaintiff's application for leave to appeal.  *Edwards v. Oakland Cty. Treasurer*, No. 157850, 503 Mich. 875, 917 N.W.2d 652 (2018).

### C.    Plaintiff's Prior E.D. Mich. Case

The following month, on November 8, 2018, Plaintiff filed, *in pro per,* a federal lawsuit, which alleged violations of the Fair Housing Act, Michigan law, the Due Process Clause of the United States Constitution, and the Racketeer Influenced and Corrupt Organizations (RICO) Act.  (Case No. 2:18-cv-13488-PDB-APP (E.D. Mich.), ECF No. 1.)  Notable to the present matter, Plaintiff's state law cause of action cited a portion of Michigan's General Property Tax Act (GPTA), Mich. Comp. Laws § 211.78(2).  (*Id.* ¶ 39.)

The following day, in state district court, SNRI filed an application for an order of eviction, which was granted with the caveat "not to execute before Nov[ember] 27, 2018."  (ECF No. 30-7.)  On January 2, 2019, Judge Borman entered an opinion and order denying Plaintiff's motion for preliminary injunction and dismissing Plaintiff's complaint for lack of subject matter jurisdiction.  *Edwards v. Meisner*, No. 18-CV-13488, 2019 WL 78890 (E.D. Mich. Jan. 2, 2019).  Specifically, the Court found that:  (1) "Plaintiff's Claims Seeking to

4

Overturn State Court Orders of Foreclosure and Eviction Are Barred Under the

Rooker-Feldman Doctrine[;]"[1] and, (2) "The Entirety of Plaintiff's Complaint is

Barred by the Tax Injunction Act and Related Principles of Comity[.]" *Edwards*,

2019 WL 78890, *4, *7.  Still, the dismissal was without prejudice, "leaving

Plaintiff free to attempt to bring these claims 'in an appropriate state forum.'"  *Id.*

at *13 (*quoting Rafaeli, LLC v. Wayne County*, No. 14-13958, 2015 WL 3522546,

at *10 (June 4, 2015)).

Five days later, on January 7, 2019, the state district court granted SNRI's

motion for execution of a writ of eviction but effectively forestalled execution until

January 11, 2019.  (ECF No. 30-6.).

### D.    The Instant Case

Also on January 7, 2019, Plaintiff filed the instant lawsuit *in pro per*.  (ECF

No. 1.)  It seems that, on January 15, 2019, Plaintiff filed a "Notice of Lis

Pendens."  (ECF No. 24, PageID.573-775 [Exhibit 4].)  The May 9, 2019 amended

complaint in this matter names a multitude of Defendants, which can be grouped as

follows:

---

[1] "The *Rooker–Feldman* doctrine prevents the lower federal courts from exercising jurisdiction over cases brought by 'state-court losers' challenging 'state-court judgments rendered before the district court proceedings commenced.'" *Lance v. Dennis*, 546 U.S. 459, 460 (2006) (quoting *Exxon Mobil Corp. v. Saudi Basic Industries Corp.,* 544 U.S. 280, 284 (2005)).

- The Oakland County Defendants (the county and County Treasurer Andrew Meisner)

- Defendant Michigan Municipal Risk Management Authority (MMRMA)

- The City of Southfield Defendants (the city and several individuals)

- The SNPHC Defendants (the corporation and several individuals)

- The SNRI Defendants (the initiative and several individuals)

- Defendant HFH

(ECF No. 24, PageID.536; ECF No. 24 ¶¶ 9-13.)[2]

Plaintiff's amended complaint begins with an 8-page, narrative "introduction."  However, "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b).  Looking to the numbered paragraphs, Plaintiff generally alleges that "[t]he taking of [his] property and *equity* over and above the fine for

---

[2] The exact number of Defendants is unclear.  Some of the individual Defendants are listed multiple times in the caption of the amended complaint.  Moreover, the Court suspects that Defendants Kenson Siver and Ken Siver are the same individual.  (*Compare* ECF Nos. 5-6, *with* ECF Nos. 9, 15, 17, 29, 36.)  Finally, while the Oakland County Defendants are listed in the caption, as required by Fed. R. Civ. P. 10(a), the Oakland County Defendants are not listed in Plaintiff's description of the "parties," (ECF No. 24 ¶¶ 9-13), although they are listed in Plaintiff's attached "[c]omplete list of Defendants[,]" (ECF No. 24, PageID.576 [Schedule A]).

the delinquent taxes is an unlawful government taking without just compensation

and an infringement of [his] Eighth and Fourteenth Amendment rights under the

U.S. Constitution." (ECF No. 24 ¶ 6 (emphasis added).) Although Plaintiff's

operative pleading mentions several sources of authority, Plaintiff's *federal* equity-

based causes of action include:

> **(1)** alleged violations of his rights to just compensation and freedom from excessive fines, *i.e.*, a claim based upon the Fifth Amendment and/or the Eighth Amendment.

> **(2)** an alleged violation of his right to Equal Protection, *i.e.*, a claim based upon the Fourteenth Amendment;[3] and,

> **(3)** a municipal liability claim against the Oakland County Defendants, which additionally mentions deprivation of his right to due process, *i.e.*, presumably a claim based upon the Fourteenth Amendment.

(ECF No. 24 ¶¶ 29-44.)[4] Plaintiff seeks injunctive, as well as other forms of,

relief. (ECF No. 24, PageID.544-555.)

---

[3] Plaintiff seems to suggest that distribution of proceeds from a GPTA foreclosure for delinquent property taxes should occur like distribution of proceeds under Mich. Comp. Laws § 600.3252 for a mortgage foreclosure. (ECF No. 24 ¶¶ 39-40.)

[4] That Plaintiff intended his federal constitutional claims to be based on the Fifth, Eighth and Fourteenth Amendments is consistent with other portions of his operative pleading. (*See*, *e.g.*, ECF No. 24, Page ID.539, 543-547, 551.) However, it is worth noting: "Given that the [Eighth] Amendment is addressed to bail, fines, and punishments, our cases long have understood it to apply primarily, and perhaps exclusively, to criminal prosecutions and punishments." *Browning-Ferris Indus. of Vermont, Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 262 (1989).

### E.   Pending Matters

Presently, there are several pending dispositive motions:  **(1)** the Oakland County Defendants' motion to dismiss the amended complaint (ECF No. 28); **(2)** the City of Southfield Defendants' motion to dismiss and for sanctions (ECF No. 29); **(3)** the SNPHC and the SNRI Defendants' motion to dismiss Plaintiff's amended complaint and for sanctions (ECF No. 30); and, **(4)** Defendant HFH's motion to dismiss (ECF No. 37).  Defendant MMRMA has yet to appear.  (ECF No. 49 at 5.)

On June 13, 2019, Plaintiff filed a combined response to the first three motions.  (ECF No. 33.)  The respective Defendants filed individual replies.  (ECF Nos. 34, 36, 38.)  Thereafter, an additional dispositive motion having been filed by that point, Plaintiff filed a combined response to the four pending dispositive motions.  (ECF No. 39.)

### F.   Discussion

#### 1.   Plaintiff does not wish to reverse the GPTA tax foreclosure; rather, he seeks return of the equity.

Plaintiff's case stems from the administration of Michigan's GPTA, which is codified at Mich. Comp. Laws §§ 211.1-211.157.  (ECF No. 24 ¶¶ 1-3, 44.)  The GPTA contains provisions regarding "reception and annulment," including one

that addresses "[a]ctions for recovery of monetary damages after judgment for foreclosure[.]" Mich. Comp. Laws Ann. § 211.78*l*. In addition:

> If property purchased by a city, village, township, or county under this subsection is subsequently sold for an amount in excess of the minimum bid and all costs incurred relating to demolition, renovation, improvements, or infrastructure development, the excess amount shall be returned to the <u>delinquent tax property sales proceeds</u> account for the year in which the property was purchased by the city, village, township, or county or, if this state is the foreclosing governmental unit within a county, to the land reutilization fund created under section 78n.

Mich. Comp. Laws § 211.78m(1) (emphasis added). Distribution of delinquent tax property sales proceeds is addressed in Mich. Comp. Laws § 211.78m(8).

In this lawsuit, Plaintiff estimates the subject property's value at $150,000 and claims that the sale of his property for less than $15,000 in delinquent property taxes has stripped him of "over $135,000 in equity." (ECF No. 24 ¶¶ 4, 20-22.) Plaintiff seems to recognize that "[t]he *Rooker–Feldman* doctrine prevents a federal court from exercising jurisdiction over a claim alleging error in a state court decision." *Riser v. Schnieder*, 37 F. App'x 763, 764 (6th Cir. 2002); *see also Givens v. Homecomings Fin.*, 278 F. App'x 607, 608 (6th Cir. 2008) ("[t]he federal district courts do not hear appeals from state courts."). Perhaps anticipating such a defense, Plaintiff explains that he "does not seek to reverse the tax foreclosure per the Rooker-Feldman doctrine, but requests just compensation and return of the *equity* in his property." (ECF No. 24 ¶ 25 (emphasis added).) In other words, he

seeks this Court's involvement "only as it relates to his federal rights of equal

protection, due process, just compensation, and right to profit solely from the fruits

of his labor over 5 year[s] and right to be free from excessive fines per the Eight[h]

Amendment."  (ECF No. ¶ 28.)

### 2.   Plaintiff Edwards's claims are not unique to the federal courts, or, for that matter, Michigan's courts.

#### a.   The *Rafaeli* cases

In 2014, Rafaeli, L.L.C. and Great Lakes Affordable Housing, L.L.C.

(GLAH) filed a lawsuit against Wayne and Oakland Counties and their respective

Treasurers.  Case No. 4:14-cv-13958-TGB-MKM (E.D. Mich.).  Rafaeli and

GLAH alleged, among other things, that "[t]he failure of the GPTA to provide a

basis to and an avenue for recovery of the surplus proceeds or any equity permits a

taking without just compensation and is therefore unconstitutional."  (*Id.* [ECF No.

1 ¶ 90].)  Judge Berg granted Defendants' motion to dismiss.  *Rafaeli, LLC v.

Wayne Cty.*, No. 14-cv-13958, 2015 WL 3522546 (E.D. Mich. June 4, 2015).  In so

doing, he explained that "before a taking claim may be considered ripe for

adjudication in this Court, Plaintiffs must first bring an inverse condemnation

claim in state court, seeking to recover their forfeited surplus equity."  *Rafaeli*,

2015 WL 3522546, at *9.  *See also Hammoud v. Cty. of Wayne*, No. 15-CV-14461,

2016 WL 4560635, at *4-*6 (E.D. Mich. Sept. 1, 2016) (Levy, J.), *aff'd sub*

*nom. Hammoud v. Wayne Cty.*, 697 F. App'x 445 (6th Cir. 2017).

On June 8, 2015 – merely four days after Judge Berg dismissed the federal

case – Rafaeli and Andre Ohanessian filed a state court case against Oakland

County and its Treasurer.  Case No. 2015-147429-CZ (Oakland County).  On

October 8, 2015, that court granted the motion for summary disposition, and, on

December 8, 2015, it denied the motion for reconsideration and leave to file an

amended complaint.  The Michigan Court of Appeals affirmed.  *Rafaeli, LLC v.*

*Oakland Cty.*, No. 330696, 2017 WL 4803570, at *1 (Mich. Ct. App. Oct. 24,

2017).  Notably, after acknowledging Judge Berg's June 4, 2015 opinion in *Rafaeli*

and Judge Kethledge's February 10, 2017 dissent in *Wayside Church*, the

concurring opinion stated:  "I conclude we must reject plaintiffs' claim despite

what appears to be *an obvious injustice that requires remedial action*."  *Rafaeli*,

2017 WL 4803570, at *6 (Shapiro, J., concurring) (emphasis added).

On December 4, 2017, Rafaeli filed an application for leave to appeal.  On

November 21, 2018, the Michigan Supreme Court granted leave to appeal and

directed the parties to "address whether the defendants violated either the Takings

Clause of the United States Constitution, U.S. Const., Am. V, or the Takings

Clause of the Michigan Constitution, Const. 1963, art. 10, § 2, or both, by retaining

proceeds from the sale of tax foreclosed property that exceeded the amount of the

11

tax delinquency in accordance with MCL 211.78m(8)(h)." *Rafaeli, LLC v.
Oakland Cty.*, No. 156849, 503 Mich. 909, 919 N.W.2d 401 (Nov. 21, 2018)
(emphasis added). Supplemental briefing is due on December 13, 2019. *See
Rafaeli, LLC v. Oakland Cty.*, No. 156849, 2019 WL 6359413, at *1 (Mich. Nov.
27, 2019).

### b.  *Wayside Church v. Van Buren County (W.D. Mich.)*

On December 11, 2014, Wayside Church and two individuals filed a "class
action complaint" against Van Buren County and its Treasurer. *Wayside Church,
et al. v. Van Buren County, et al.*, Case No. 1:14-cv-01274-PLM (W.D. Mich.). In
that case, Plaintiffs generally alleged that their real property was taken for non-
payment of real property taxes "without offer, tender or return of the surplus
proceeds to Plaintiffs and members of Plaintiff class." (*Id*., ECF No. 1, PageID.2-3
¶¶ 4, 7.) On November 9, 2015, Judge Maloney denied the motion to dismiss
under Fed. R. Civ. P. 12(b)(1) but granted the motion under Rule 12(b)(6).

However, on appeal, the Sixth Circuit vacated the Court's judgment and
remanded with instructions to dismiss the case for lack of subject matter
jurisdiction. *Wayside Church v. Van Buren Cty.*, 847 F.3d 812 (6th Cir. Feb. 10,
2017). When discussing the "Ripeness of Takings Clause Claims," the Sixth
Circuit noted: "For plaintiffs to be obligated to seek redress in the state courts
before litigating in federal court, the state procedures must be 'reasonable, certain,

and adequate ... at the time of the taking.'" *Wayside Church*, 847 F.3d at 818

(quoting *Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson*

*City*, 473 U.S. 172, 194 (1985) (quotation omitted)).[5]  The Sixth Circuit concluded,

among other things, that "§ 211.78*l* of the GPTA does not bar Plaintiffs from filing

their Takings Clause claims in state court[,]" and "the district court erred in finding

that the claims were not barred by the Tax Injunction Act and the doctrine of

comity[.]" *Wayside Church*., 847 F.3d at 820, 822-823.  Nonetheless, for reasons

which will become apparent below, it is helpful to note Judge Kethledge's dissent:

> In this case the defendant Van Buren County took property worth
> $206,000 to satisfy a $16,750 debt, and then refused to refund any of
> the difference.  In some legal precincts that sort of behavior is called
> theft.  But under the Michigan General Property Tax Act, apparently,
> that behavior is called tax collection.  The question here is—or at least
> in my view should be—whether the County's action is a taking under
> the federal Constitution.
> . . .
> . . . the Michigan courts have not yet determined, as a matter of state
> law, whether a local government's appropriation of property pursuant
> to the taxing power generally, or to the General Property Tax Act in
> particular, is a taking to the extent the government takes property
> worth more than the amount of taxes owed.

---

[5] In *Williamson County*, the Supreme Court granted certiorari "to address the
question whether Federal, State, and Local governments must pay money damages
to a landowner whose property allegedly has been 'taken' temporarily by the
application of government regulations."  *Williamson County*, 473 U.S. at 185.  The
Supreme Court ultimately concluded that respondent's claim was premature,
"whether it is analyzed as a deprivation of property without due process under the
Fourteenth Amendment, or as a taking under the Just Compensation Clause of the
Fifth Amendment."  *Id*. at 200.

13

*Wayside Church*, 847 F.3d at 823 (Kethledge, C.J., dissenting), *cert. denied sub nom. Wayside Church v. Van Buren Cty., Mich.*, 138 S. Ct. 380, 199 L. Ed. 2d 278 (Oct. 30, 2017).  *See also Lumbard v. City of Ann Arbor*, 913 F.3d 585, 592 (6th Cir. Jan. 10, 2019) ("Federal courts have a 'virtually unflagging' obligation to exercise the jurisdiction that Congress has given them. . . . Congress has given us jurisdiction to hear these takings claims.  Our constitutional order would be better served, I respectfully suggest, if we simply adjudicated them.") (Kethledge, J., concurring) (internal citation omitted), *cert. denied*, 140 S. Ct. 267 (2019).

On March 28, 2017, Judge Maloney dismissed the *Wayside Church* case without prejudice for lack of subject matter jurisdiction.  One year later, on March 28, 2018, Plaintiffs filed a motion to reopen the case, which Judge Maloney granted on March 26, 2019, ordering that "the case shall be held in abeyance pending a decision by the Michigan Supreme Court in *Rafaeli v. Oakland County* and/or the United States Supreme Court in *Knick v. Township of Scott*."  In *Knick*, the Supreme Court granted certiorari "to reconsider the holding of *Williamson County* that property owners must seek just compensation under state law in state court before bringing a federal takings claim under § 1983."  *Knick v. Twp. of Scott, Pennsylvania*, 139 S. Ct. 2162, 2169 (2019). [6]

---

[6] *See also O'Connor v. Chatfield*, No. 2:19-CV-00218, 2019 WL 5616865, at *5 (W.D. Mich. Oct. 31, 2019) (where Plaintiff alleged, *inter alia*, "an unlawful

Although the Michigan Supreme Court has yet to issue its decision in

*Rafaeli*, the United States Supreme Court issued the *Knick* decision on June 21,

2019.  It concluded that "the state-litigation requirement imposes an unjustifiable

burden on takings plaintiffs, conflicts with the rest of our takings jurisprudence,

and must be overruled[,]" "[a] property owner has an actionable Fifth Amendment

takings claim when the government takes his property without paying for it[,]" and

"a government violates the Takings Clause when it takes property without

compensation, and that a property owner may bring a Fifth Amendment claim

under § 1983 at that time."  *Knick v. Twp. of Scott, Pennsylvania*, 139 S. Ct. 2162,

2167, 2177 (2019).  Stated otherwise, "[t]he state-litigation requirement

of *Williamson County* is overruled.  A property owner may bring a takings claim

under § 1983 upon the taking of his property without just compensation by a local

government."  *Knick*, 139 S. Ct. at 2179.  Thus, *Knick* overruled a case upon which

the Sixth Circuit's February 10, 2017 decision in *Wayside Church* relied.

Nonetheless, as of December 11, 2019, *Wayside Church* remains "in abeyance

_____

taking of his property[,]" and within the discussion of subject matter jurisdiction,
Judge Maloney stated:  "The Sixth Circuit did not have the benefit of the [October
24, 2017] Michigan Court of Appeals decision [in *Rafaeli*] when it
remanded *Wayside Church* [on February 10, 2017] with instructions to dismiss that
case.").

pending the Michigan Supreme Court's decision in *Rafeli*."  *See* Case No. Case

1:14-cv-01274-PLM (W.D. Mich.) (ECF No. 81, PageID.878).

### c.   *Freed v. Thomas, et al. (E.D. Mich.)*

On October 28, 2017, Donald Freed filed a lawsuit against Gratiot County

and its Treasurer, the introduction to which clearly refers to Judge Kethledge's

dissent in *Wayside Church*, although without attribution.  *Freed v. Thomas, et al.*,

Case No. 1:17-cv-13519-BAF-PTM (E.D. Mich.) (ECF No. 1 ¶ 2.)  Freed alleged

unconstitutional takings and excessive fines, and his takings claim referenced the

then-4-day-old Michigan Court of Appeals's decision in *Rafaeli*.  (*Id.*, ECF No. 1

¶¶ 26-29.)  For example, Freed alleged that "the State of Michigan's courts

recently and clearly failed to recognize such a taking as existing as a matter of state

law[.]"  (ECF No. 1 ¶ 28.)  Among other things, Freed sought "an order . . .

declaring the General Property Tax Act, Act 206 of 1893, as applied to [him][,] . . .

unconstitutional and enjoin[ing] its future application in the same manner against

[him] by Defendants[.]"  (*Id.*, ECF No. 1 ¶ 39b.)

Judge Friedman denied Defendants' motion to dismiss.  *Freed v. Thomas*,

No. 17-CV-13519, 2018 WL 1964669, at *1 (E.D. Mich. Apr. 26, 2018).

However, Judge Friedman later vacated that order and dismissed the complaint for

lack of subject matter jurisdiction.  *Freed v. Thomas*, No. 17-CV-13519, 2018 WL

5831013, at *1 (E.D. Mich. Nov. 7, 2018).  Importantly, his description of Freed's

case is similar to the case presently before this Court:

> The heart of plaintiff's complaint is that this statutory scheme is
> unconstitutional because it provides no mechanism for the return to
> the delinquent taxpayer of the "surplus equity" (i.e., the difference
> between the equity and the tax bill) or, in the event that the property is
> sold for less than fair market value, for the return to the delinquent
> taxpayer of the difference between the sale proceeds and the tax bill.

*Freed*, 2018 WL 5831013, at *2.  Acknowledging that "[t]he obvious inequity of

this system has not gone unnoticed by the courts[,]" and referring to *Wayside*

*Church* and *Rafaeli, L.L.C.*, Judge Friedman concluded:  "Whether correctly

decided or not, *Wayside Church* is binding on this Court."  (*Id*. at *2-*3.)

Freed immediately filed a notice of appeal.  The case was argued at the Sixth

Circuit on May 9, 2019.  *Freed v. Thomas, et al.*, No. 18-2312 (ECF No. 53.)

Since then, the Sixth Circuit has accepted "supplemental briefing as to if and how

the Supreme Court's recent decision in *Knick* . . . affects this case."  (*See id*. at

ECF Nos. 54-63.)  Moreover, the court is in the process of accepting supplemental

briefing as to "whether the Court should wait until after the Michigan Supreme

Court decides *Rafaeli* . . . before issuing its opinion in this case."  (*See id*. at ECF

Nos. 66-72).  Through December 17, 2019, the Sixth Circuit has not issued its

decision.

**3.    The Court should deny without prejudice the Oakland County, City of Southfield, SNPHC and SNRI Defendants' motions to dismiss (ECF Nos. 28, 29 & 30) and administratively stay this case as to these defendants.**

The Oakland County and SNPHC / SNRI Defendants have moved for dismissal based upon Fed. R. Civ. P. 12(b)(1) and 12(b)(6), and the City of Southfield Defendants contend that "Plaintiff's claims are still barred by the Tax Injunction Act, principle of comity, *Rooker-Feldman* doctrine, and *res judicata*[.]" (ECF No. 28 at 8-9, PageID.630-631; ECF No. 29, PageID.767; ECF No. 30, PageID.1035-1036.)  Yet, Edwards's lawsuit does not seek to reverse the GPTA tax foreclosure.  (ECF No. 24 ¶ 25.)  Instead, at the heart of Edwards's May 9, 2019 operative pleading are equity-based claims, which are similar to those in *Rafaeli*, *Wayside Church*, and *Freed*.  Yet, *Rafaeli* is under consideration by Michigan's Supreme Court, the Sixth Circuit's opinion in *Wayside Church* has been called into question by the United States Supreme Court's decision in *Knick*, and the Sixth Circuit is considering whether to pause its opinion in *Freed* pending the ruling in *Rafaeli*.

Moreover, the moving parties have not engaged in robust briefing on *Rafaeli*, *Wayside Church*, or *Freed*.  For example, the Oakland County Defendants' May 15, 2019 dispositive motion does not address these cases.  (ECF No. 28.)  Also, the City of Southfield Defendants' May 23, 2019 dispositive

motion mentions only the October 24, 2017 Michigan Court of Appeals opinion *without acknowledging that leave to appeal was granted on November 21, 2018.* (ECF No. 29, PageID. 778.) Furthermore, the SNPHC and SNRI Defendants' May 23, 2019 dispositive motion cites Judge Berg's June 4, 2015 opinion in *Rafaeli*, but these Defendants oddly omit discussion of the *Rafaeli* state court case (which was then pending before the Michigan Supreme Court). (ECF No. 30, PageID.1050-1051.)

To his credit, Plaintiff's June 13, 2019 combined response notes, *inter alia*, that *Rafaeli* "is pending review before the Michigan Supreme Court this fall . . . ." (ECF No. 33 at 3, 9.) In reply: (a) the Oakland County Defendants acknowledge that *Rafaeli* is before the Michigan Supreme Court, although they claim it does not support Plaintiff's argument (ECF No. 34, PageID.1145-1146); (b) the City of Southfield Defendants seemingly acknowledge, but do not analyze the effect of, the state court *Rafaeli* case, yet concede that "*Rafaeli* is applicable to the jurisdictional analysis here[,]" expressly citing only the earlier "federal counterpart," *i.e.*, Judge Berg's June 4, 2015 decision (ECF No. 36, PageID.1153-1154); and, (c) the SNPHC and SNRI Defendants only mention *Rafaeli* to state that "Plaintiffs reliance on the *Rafaeli* case does not overcome the jurisdictional hurdle[,]" (ECF No. 38, PageID.1176). In any event, briefing on the relevant case

19

law, especially when it is currently being challenged, should occur in the motion itself, so that Plaintiff may adequately respond.[7]

With the relevant case law in flux and the moving parties' failure to adequately brief the relevant case law, it seems inefficient, at this moment, to attempt consideration of the Oakland County, City of Southfield, and SNPHC / SNRI's pending motions to dismiss.[8]  The Court should deny without prejudice these Defendants' motions to dismiss (ECF Nos. 28, 29 & 30) and should further administratively stay the case as to these defendants until the Michigan Supreme Court issues its decision in *Rafaeli* and the Sixth Circuit issues its decision in *Freed*.  Once those events take place, this Court will be in a better position to determine whether this Court has subject matter jurisdiction over Plaintiff's claims or whether Plaintiff Edwards's operative pleading (ECF No. 24) states a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(1),(6).

---

[7] In his July 16, 2019 filing, which would amount to an impermissible combined sur-reply as to the Oakland County, City of Southfield, and SNPHC / SNRI Defendants' dispositive motions (ECF Nos. 28, 29 & 30) but a permissible response to Defendant HFH's dispositive motion (ECF No. 37), Plaintiff references not only *Rafaeli* but also *Freed*.  (ECF No. 39, PageID.1184, 1197.)

[8] Moreover, some motion attachments are arguably outside of the pleadings, such as photographs of the property (ECF Nos. 29-13, 29-14, 29-15, 29-16 & 29-17) or the e-mail describing the condition of the property on January 14, 2019 (ECF No. 30-8).  Consideration of such matters may require conversion of a motion to dismiss to a Rule 56 motion for summary judgment.  Fed. R. Civ. P. 12(d).

### 4.   The Court should grant HFH's dispositive motion (ECF No. 37).

Plaintiff's intent to name HFH as a defendant is clear.  (ECF No. 24,
PageID. 537, 576.)  Fed. R. Civ. P. 10(a).  Nevertheless, his claim against HFH is
unclear.

True, Plaintiff references HFH in his narrative (*see* ECF No. 24,
PageID.540, 543-544); however, as noted above, numbered paragraphs are
required for claims or defenses.  Fed. R. Civ. P. 10(b).  In his list of the "parties,"
Plaintiff describes Defendant HFH of Oakland County as "a Michigan based
corporation with offices in the County of Oakland, State of Michigan."  (ECF No.
24 ¶ 12.)  Thereafter, Plaintiff seems to claim that *Defendant Meisner* has a
"conflict of interest," between his roles as the county treasurer and (allegedly) the
President of HFH's Board of Directors, which results in HFH using the City of
Southfield's right of first refusal under the GPTA and "a windfall of equity for the
partners to this scheme . . . ."  (ECF No. 24 ¶¶ 26, 34; *see also* ECF No. 24,
PageID.566.)[9]  Finally, in the "relief requested" section of the operative pleading,
Plaintiff seems to claim that HFH is acting outside of its role as a non-profit

---

[9] According to HFH of Oakland County's website, Meisner is simply a member of
the Board of Directors, *i.e.*, he is not even the Secretary or Treasurer, let alone the
President.  *See* https://www.habitatoakland.org/about-us/board-of-directors/ (last
visited Dec. 9, 2019).

organization, seeking a *writ quo warranto*, presumably "to revoke [its] charter."

QUO WARRANTO, Black's Law Dictionary (11th ed. 2019).  (ECF No. 24,

PageID.555 ¶ B.)

In its June 24, 2019 dispositive motion, Defendant HFH admits that "the

SNRI entered into an agreement to work with [HFH] as a resource for

rehabilitating the homes."  (ECF No. 37 PageID.1166.)  However, HFH represents

that it "does not have any ownership interest in plaintiff's home, nor does it have

any title or equity stake in plaintiff's home or the foreclosure process on plaintiff's

property."  (*Id*.)  Elsewhere, on the subject of "excess equity," HFH explains that it

"cannot possibly have any stake in this foreclosure action as Habitat has never had

*any* ownership interest in plaintiff's property."  (ECF No. 37, PageID.1171

(emphasis in original).)  Leaving these assertions aside, which seem much more

like an unsupported summary judgment argument than an attack on the pleadings,

the Complaint in fact fails to state a cognizable claim against this defendant under

Rule 8, and this party should be dismissed.

Keeping in mind that Plaintiff does not seek to reverse the GPTA tax

foreclosure, Plaintiff's federal cause of action against HFH is ambiguous, at best.

Nor does he clarify his claim in his July 16, 2019 response, which ostensibly

makes only three specific references to HFH.  First, Plaintiff explains that Meisner

became President of HFH of Oakland County in May 2016, an act which followed his presence at the City of Southfield Council Meeting where SNPHC allegedly "agreed to give $1.5 million to" HFH. (ECF No. 39, PageID.1198.) However, as noted above, it appears that Meisner is only a board member, and, even if HFH is the "nonprofit" to which the February 29, 2016 meeting notes refer, these notes also reflect that *SNPHC* would provide the capital to finance the venture. (ECF No. 24, Page ID.566.) Second, Plaintiff seems to allege that: (a) Defendant HFH has a conflict of interest in violation of the tax-exempt statute, *e.g.*, "no part of the net earnings of which inures to the benefit of any private shareholder or individual," 26 U.S.C. § 501(c)(3); (b) there is a partnership and profit sharing; and, (c) "funds flow in all directions between [HFH] of Oakland County, [t]he City of Southfield, non profit, SNR[I], board members, political contributors, and the like." (ECF No. 39, PageID.1202.) However, "no implied cause of action exists under § 501(c)(3)." *Grant v. Trinity Health-Michigan*, 390 F. Supp. 2d 643, 651 (E.D. Mich. 2005) (Rosen, J.) (agreeing with and adopting the analysis in *Lorens v. Catholic Health Care Partners*, 356 F. Supp. 2d 827, 833 (N.D. Ohio 2005)). Without such a cause of action, it is unclear what the basis of federal subject matter jurisdiction would be vis-à-vis HFH.

Finally, Plaintiff responds that Defendant SNRI "is having Habitat of Oakland County and its contractors install a new roof on my former home when no

23

roof was needed as a new roof had just been installed when Plaintiff purchased the home in 2008." (ECF No. 39, PageID.1203.) This is more a criticism as to SNRI than it is to HFH. It is also more a criticism than a cause of action. Moreover, even if Plaintiff's response clarifies his claim, "the paramount policies embodied in the well-pleaded complaint rule . . ." include that "the plaintiff is the master of the complaint," and that "a federal question must appear on the face of the complaint[.]" *Caterpillar Inc. v. Williams*, 482 U.S. 386, 398–99 (1987). Here, as to Defendant HFH, it does not.

In sum, as to Defendant HFH, the Court should: **(a)** conclude that Plaintiff's amended complaint (ECF No. 24) does not provide "a short and plain statement of the claim showing that the pleader is entitled to relief[,]" Fed. R. Civ. P. 8(a)(2); and, **(b)** grant Defendant HFH's motion to dismiss (ECF No. 37) for "failure to state a claim upon which relief can be granted[,]" Fed. R. Civ. P. 12(b)(6).

## III. PROCEDURE ON OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.* Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: December 18, 2019

Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE

**<u>Certificate of Service</u>**

I hereby certify that a copy of the foregoing document was sent to parties of record on December 18, 2019, electronically and/or by U.S. Mail.

<div style="margin-left: 40%;">

s/Michael Williams_____
Case Manager for the
Honorable Anthony P. Patti

</div>